PEOPLE v TRAVER

Docket No. 325883. Submitted May 10, 2016, at Traverse City. Decided
   August 2, 2016, at 9:10 a.m.

   Gary M. Traver was convicted following a jury trial in the Mackinac
      Circuit Court of assault with a dangerous weapon (felonious
      assault), MCL 750.82, and possession of a firearm during the
      commission of a felony (felony-firearm), MCL 750.227b, but was
      acquitted of interfering with electronic communications, MCL
      750.540(a), and carrying a concealed weapon (CCW), MCL
      750.227. Defendant had a year-long dispute with his neighbor
      over the location of the property line between their adjoining
      properties. The dispute culminated in a physical altercation
      between the two men and resulted in defendant initially being
      charged with felonious assault, interfering with electronic com-
      munications, and CCW. Defendant entered into a plea agreement
      that allowed him to avoid incarceration but later withdrew that
      plea. After the plea withdrawal, the prosecution charged defen-
      dant with the additional crime of felony-firearm, conviction of
      which requires a mandatory two-year prison term. The court,
      William W. Carmody, J., provided the jury with written instruc-
      tions regarding the elements of the charged offenses but did not
      read them aloud. In addition, while the written instructions listed
      the elements of possession for purposes of felony-firearm, the
      actual elements of felony-firearm, as set forth in M Crim JI 11.34,
      were omitted. Defendant appealed.

         The Court of Appeals held:

         1. A trial judge charges a jury by verbally instructing the
      jurors on the law and explaining the deliberative process. Jury
      instructions are always spoken because it aids in the jurors'
      understanding of them and, for that reason, aids in a fair trial.
      The trial court cannot assume that all jurors read or are able to
      read the provided written instructions; oral instructions allow a
      jury to consider the applicable law before deliberating.

         2. In Michigan, MCR 2.512 and MCR 2.513 address the
      process of instructing a jury. MCR 2.512(A)(4) provides that after
      the parties submit written requests for jury instructions, the
      court must inform the attorneys of its proposed action on the

requests before their arguments to the jury. Under MCR 2.512(B)(2), once the trial court determines which instructions it will give, it must instruct the jury on the applicable law either before or after the arguments of counsel, or at both times, as the court elects. MCR 2.512(B)(2) provides that jury instructions approved by the Committee on Model Criminal Jury Instructions must be given if the instruction applies, it is accurate, and it is requested by a party. MCR 2.513(N)(1) provides, in part, that after closing arguments are made or waived, the court must instruct the jury as required and appropriate, but at the discretion of the court, and on notice to the parties, the court may instruct the jury before the parties make closing arguments. While instructions may also be given in written form, by using the word "instruct" in MCR 2.513(N)(1), the Supreme Court signaled that a trial judge must orally instruct the jury. In addition, MCR 2.513(N)(3)—which requires a trial court to provide the jury with a written copy of the final jury instructions to take into the jury room for deliberation—would be surplusage had the Supreme Court intended trial courts to dispense with oral instructions.

3. The trial court plainly erred by failing to verbally communicate a complete set of jury instructions, and the plain error affected defendant's substantial right to have a properly instructed jury consider the evidence. The error seriously affected the integrity of the proceedings because defendant had a constitutional right to have the jury determine his guilt by considering every essential element of the charged offenses. The integrity of the process was impugned because it was impossible to determine from the record whether the jurors received and considered the instructions addressing the elements of the charged offenses.

4. A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense. Although instructional errors that misstate or omit elements of a crime do not necessarily mandate a new trial, the absence of any instruction at all does. Automatic reversal is required when structural error occurs, such as when a jury is allowed to deliberate a criminal charge without first being instructed regarding the elements of the offense. In Michigan, M Crim JI 11.34 provides that to prove the crime of felony-firearm, the prosecution must prove that the defendant committed (or attempted to commit) a specified felony (but conviction of that offense is unnecessary) and that at the time defendant committed (or attempted to commit) the felony, he or she knowingly carried a firearm. In this case, the trial court violated MCR 2.512(D)(2) because the felony-firearm instruction

requested by the prosecution, M Crim JI 11.34, was applicable and accurate. The error required reversal of defendant's convictions without consideration of defendant's waiver of instructional error or his related ineffective assistance claims; the structural error mandated automatic reversal because the trial court did not instruct the jury on the elements of felony-firearm and provided inaccurate written instructions regarding those elements.

5. It was not possible to determine from the record whether trial counsel's performance was deficient in relation to defendant's plea withdrawal. Remand for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436 (1973), was necessary to determine whether trial counsel adequately informed defendant of the promised collateral consequence of withdrawing his plea, specifically that the prosecution would add the charge of felony-firearm, which, if defendant were convicted, would carry a two-year mandatory sentence.

Reversed and remanded.

SAWYER, J., dissenting, disagreed with the majority's jury-instruction analysis, concluding that because defendant expressed satisfaction with the given instruction, he waived any claimed error in the instructions themselves. Defendant's claim that he was denied effective assistance because trial counsel failed to raise certain objections to the felony-firearm instruction was without merit. Defendant failed to establish the factual predicate of his claim that the jury instructions were not correct, specifically that the felony-firearm instruction erroneously required the jury to find him guilty of felony-firearm if it found him guilty of felonious assault. The trial court's instruction was an incorrect statement of the law, but the error was prejudicial to the prosecution, not defendant. Because he was not prejudiced by any error related to the jury instructions, defendant was unable to establish ineffective assistance of counsel. Contrary to the majority's argument, the court rules do not specifically require the jury to be verbally instructed on the law, rather than instructed in writing; while reading the instructions to a jury is common practice, that does not make it required. Even if it were error to give instructions only in writing, defendant was unable to demonstrate that he was denied effective assistance because he cannot prove there is a reasonable likelihood he would have been acquitted had the instructions been spoken, rather than provided only in writing. Defendant also failed to establish the factual predicate for his claim that he was denied effective assistance during the plea withdrawal hearing. Judge SAWYER would have affirmed defendant's convictions.

1. JURY — INSTRUCTIONS — VERBAL COMMUNICATION OF INSTRUCTIONS REQUIRED.

    While jury instructions in a criminal case may be in written form,
    taken as a whole the court rules—MCR 2.512(A)(4), MCR
    2.512(B)(2), MCR 2.512(D)(2), and MCR 2.513(N)(1) and (3)—
    require a trial judge to verbally communicate a complete set of
    jury instructions that includes the elements of each charged
    offense before deliberations begin; the court rules require the trial
    judge to orally instruct, or teach, the jury the relevant law.

2. JURY — INSTRUCTIONS — LACK OF VERBAL COMMUNICATION — STRUCTURAL
    ERROR REQUIRING REVERSAL.

    A trial court's failure to verbally communicate instructions to a jury
    regarding the elements of each charged offense in a criminal case
    constitutes structural error requiring reversal.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Jessica E. LePine*, Assistant Attorney General, for the people.

*Cecilia Quirindongo Baunsoe* for defendant.

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

GLEICHER, P.J. More than a century ago, our Supreme Court declared that "it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts." *People v Murray*, 72 Mich 10, 16; 40 NW 29 (1888). In this case, the circuit court shirked that duty in two respects. First, the court provided the jurors with written instructions regarding the elements of the offenses with which defendant, Gary Traver, was charged, but never read the elements aloud. While providing a jury with written instructions is a welcome reform, it does not substitute for a spoken

charge. Second, the written felony-firearm instruction handed to the jury was hopelessly incorrect, as it omitted the actual elements of the offense.

These errors compel us to reverse Traver's convictions for assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and remand for a new trial.

I

Traver and his neighbor, Patrick St. Andre, shared an access route to their adjacent properties. They disagreed about where each was entitled to park. Tensions flared when Traver allegedly threatened to shoot St. Andre if St. Andre touched Traver's car. A sheriff's deputy called to the scene temporarily defused the situation by suggesting that the two resolve their dispute in "civil court."

The feud re-erupted the next morning. St. Andre recalled that as he walked toward his cabin, Traver shouted obscenities from his trailer window and brandished a gun. Traver advanced an alternate account. St. Andre appeared at his trailer window before daybreak, Traver asserted, "yelling and screaming ... maybe a little window banging." Traver recounted that he pulled out the "Glock 40" he kept next to his bed, pointed it "at a 90" and told St. Andre to "get away from my window. Which he did." St. Andre called 911.

According to St. Andre, Traver "come [sic] around the corner with the gun and proceeded to assault me," grabbing St. Andre by the shoulders and pushing him down. St. Andre maintained that Traver clutched a weapon throughout the attack. Traver testified that St. Andre had approached in the semidarkness "with his hand out in front of him," so Traver "swatted it out of

my face" before returning to his trailer and calling a towing company to have St. Andre's car moved. Traver denied possession of his gun during this phase of the action. When the tow truck arrived, Traver recounted, he put his gun in his back pocket. Traver denied pointing the gun at anyone that day.

In addition to these two widely divergent recollections, allies of the combatants offered conflicting eyewitness versions of what had transpired. A friend of St. Andre's claimed that Traver "flung" St. Andre to the ground and was "waving a handgun . . . all over the place." Traver's friend testified that Traver did not have a gun and that he did not see Traver physically assault St. Andre. An audiotape of St. Andre's 911 call capped the evidence. From start to finish, this was a credibility contest rather than a slam dunk for the prosecution.

Following closing arguments, the trial court read to the jury most of the routine model criminal jury instructions, but omitted M Crim JI 3.20, which provides in relevant part that "[y]ou may find the defendant guilty of all or [any one/any combination] of these crimes . . . or not guilty." The court then stated:

> When you go to the jury room, ladies and gentlemen, you will be provided with a written copy of these instructions *should you so choose*. If there are instructions that I have given and others that I will give that you wish copies of, they will be provided to you. You've already received the charges and the elements of the same. [Emphasis added.]

At the outset of the trial, the court had provided the jurors with written instructions reciting the elements of the charged offenses.[1] An official copy of these

---

[1] In its preliminary instructions the trial court stated: "To prove the charges, the prosecutor must prove beyond a reasonable doubt the following information that you have in your hand. I'd ask you to take a look now at what has been passed out to you."

instructions is nowhere to be found in the record. Attached to a couple of handwritten juror questions stuck loosely in the court file are two heavily folded copies of a two-page, typed document, which we reprint in their entirety here, complete with a juror's notes:

*Not Guilty.*

**Count 1-Carrying Concealed Weapon-Dangerous Weapon**

The defendant is charged with the crime of carrying a concealed weapon. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First- that the defendant knowingly carried a weapon-a pistol. It does not matter why the defendant was carrying the weapon, but to be guilty of this crime the defendant must have known that it was a weapon.

Second- that this pistol was concealed. Complete invisibility is not required. A weapon is concealed if it cannot easily be seen by those who come into ordinary contact with the defendant.

*Guilty*

**Count 2-Assault with a Dangerous Weapon**

The defendant is charged with the crime of felonious assault. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First- that the defendant either attempted to commit a battery on Patrick Richard St.Andre or did an act that would cause a reasonable person to fear or apprehend an immediate battery. A battery is a forceful or violent touching of the person or something closely connected with the person

Second- that the defendant intended either to injure Patrick Richard St.Andre or to make Patrick Richard St.Andre reasonable fear an immediate battery.

Third- that at the time, the defendant had the ability to commit a battery, appeared to have the ability, or thought he had the ability.

Fourth- that the defendant committed the assault with a dangerous weapon-pistol.

*NOT GUILTY*          *NOT GUILTY*

**Count 3- Telephone Interference**

The defendant is charged with the crime of interfering with an electronic communication. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First- that the defendant prevented, obstructed, or delayed, by any means, the sending of an authorized communication through any electronic medium of communication. It does not matter whether the communication was actually sent or received.

Second- that the defendant did this willfully and maliciously. This means that the defendant did the act on purpose and with the intent to prevent, obstruct, or delay the communication.

**Count 4- Felony Firearm-Possession**          *GUILTY*

Possession does not necessarily mean ownership. Possession means that either:

  1) The person has actual physical control of the thing as I do with the pen I am now holding, or
  2) The person knows the location of the firearm and has reasonable access to it.

Possession may be sole where one person alone possesses the firearm.

Likely these are the same instructions distributed at the outset of the case. At no time did the trial court orally instruct the jury regarding the elements of the charged offenses. The jury convicted Traver of felonious assault and felony-firearm. It acquitted him of carrying a concealed weapon (CCW), MCL 750.227, and interfering with electronic communications, MCL 750.540(5)(a).

II

Traver's appellate counsel contends that the trial court "deprived the jury of an understanding of what the Prosecutor had to prove beyond a reasonable doubt" by failing to read aloud the elements of the two counts on which Traver was found guilty. The absence of any objection to this omission, Traver asserts, constitutes ineffective assistance of counsel. Appellate counsel further complains that the trial court failed to give M Crim JI 3.20, and that the instructions as given were defective.

Two court rules address the process of instructing a jury. Neither specifically states that the instructions must be oral. But both contemplate that instructions must always be spoken, at least in the first instance. Under the court rules, written instructions serve as an adjunct to the spoken instructions. Read in context, a trial court may not simply skip the reading-aloud step by merely handing the jurors a document listing the elements of the charged crimes.

The first pertinent court rule, MCR 2.512(A)(4), provides that after the parties submit written requests for jury instructions, "[t]he court shall inform the attorneys of its proposed action on the requests before their arguments to the jury." Perhaps that was done here, despite that it was not recorded.[2] Once the trial court determines which instructions it will give, it "shall instruct the jury on the applicable law" either before or after the arguments of counsel, "or at both times, as the court elects . . . ." MCR 2.512(B)(2). If the Committee on Model Criminal Jury Instructions approves an instruction, it must be given if it applies, is accurate, and is requested by a party. MCR 2.512(D)(2).

MCR 2.513(N) also addresses jury instructions. It provides:

> Before closing arguments, the court must give the parties a reasonable opportunity to submit written requests for jury instructions. Each party must serve a copy of the written requests on all other parties. The court must inform the parties of its proposed action on the requests

---

[2] The trial court required the parties to submit written jury instructions, and those instructions appear in the record. Conspicuously absent from the record is any indication that the court and the parties discussed the jury instructions. If a conference occurred, it was not transcribed or otherwise noted. No "official" complete copy of the instructions appears in the record.

before their closing arguments. After closing arguments
are made or waived, the court must instruct the jury as
required and appropriate, but at the discretion of the
court, and on notice to the parties, the court may instruct
the jury before the parties make closing arguments. After
jury deliberations begin, the court may give additional
instructions that are appropriate. [MCR 2.513(N)(1).]

The phrase "the court must instruct the jury" carries a
plain, ordinary, and commonly understood meaning.
Judges instruct juries by speaking to them out loud,
reading jury instructions or reciting them from
memory. Spoken communication of the final instruc-
tions is deeply ingrained in the history of jury trials.
"Charging" a jury, a time-honored description of the
instruction process, involves a judge *telling* the jurors
what the law is and explaining the deliberative pro-
cess.

Subrule (N)(3) cements our commonsense construc-
tion of the court rules as a mandate for spoken instruc-
tions. It states:

Copies of Final Instructions. The court shall provide a
written copy of the final jury instructions to take into the
jury room for deliberation. Upon request by any juror, the
court may provide additional copies as necessary. The
court, in its discretion, also may provide the jury with a
copy of electronically recorded instructions.

Had the Supreme Court contemplated that a trial
court could dispense with orally instructing the jury,
MCR 2.513(N)(3) would be surplusage.

Resorting to a dictionary yields the same conclusion.
These rules repeat the same verb in relation to a trial
court's task of imparting the law: "instruct." That word
is commonly defined as "to give knowledge to: TEACH,
TRAIN," "to provide with authoritative information or
advice," or "to give [someone] an order or command."

*Merriam-Webster's Collegiate Dictionary* (11th ed), p 649. While "instructions" may be in written form, by using the word "instruct" in MCR 2.513(N)(1), the Supreme Court signaled that a trial judge would orally "teach" the jury the law. Teaching almost always begins as a verbal experience. And historically judges have taught jurors the law by speaking to them, reading instructions, and by answering their questions aloud.[3]

There are important reasons that in the English and American legal traditions, jury instructions are always spoken. "Reading a complete set of instructions after the evidence ensures that the jury hears and considers all applicable law before deliberations." *State v Nelson*, 587 NW2d 439, 444; 1998 SD 124 (1998). "Instruction of the jury is one of the most fundamental duties of the court and it is only through their oral delivery that the court can be assured that each member of the jury has actually received all of the instructions." *State v Norris*, 10 Kan App 2d 397, 401; 699 P2d 585 (1985).

In *Nelson*, the South Dakota Supreme Court explained that reading instructions aloud facilitates a fair trial. Reading out loud "aids understanding." *Nelson*, 587 NW2d at 444. "Repetition by first hearing the instructions and then reading them enhances recall as well as comprehension." *Id*. And the court cannot

---

[3] As sagely stated in Smith, *Effective Instructions to the Federal Jury in Civil Cases: A Consideration in Microcosm*, 18 Syracuse L Rev 559, 570 (1967):

> A jury charge is in effect a lecture on the law and the facts of a particular case. As such, the judge becomes a professor and acting in that capacity he must impart to his students, the jurors, a wide yet basic understanding of many new and complicated matters (some of which are not easily comprehended even by lawyers) in one lecture. If impediments in the court's medium of communication arise, the charge may just as well have been delivered in a foreign language.

assume that all jurors have actually read the instructions sent into the jury room, even if each was handed a copy. *Id*. We would add several other considerations. First, some jurors may not be able to read, or may read poorly. For those jurors, hearing instructions read aloud is the only method that ensures a measure of comprehension. Poorer readers may elect not to engage in the deliberations for fear that their comprehension may be called into question. Second, that a judge speaks the elements of an offense, in conjunction with the admonition that all must be proven beyond a reasonable doubt, communicates the gravity of the task of sitting in judgment. Handing jurors a few pieces of paper and telling them, in essence, to "make the best of it" sends a message that the legal "technicalities" are too unimportant to justify further expenditure of the court's time.[4]

The trial court's failure to verbally communicate a complete set of jury instructions constituted plain error that affected Traver's substantial "right to have a

---

[4] The Kansas Court of Appeals raised similar concerns in *Norris*, 10 Kan App 2d at 401-402:

> If, for example, written copies of the instructions are given to each juror, a divergence in literacy and reading comprehension may well leave some jurors uninstructed. On the other hand, if the foreman is directed to read the instructions to the other jurors, defendant is deprived of the opportunity to witness the manner in which the foreman intones the instructions. A judge is obligated to act in an impartial and unbiased manner in delivering instructions. He may not sneeringly describe the defendant's defense or make editorial comments while reading the instructions. A jury foreman is under no such constraint once the case has been submitted. Moreover, if, as in this case, the court does not even instruct the jury to read the instructions before deliberating, there is no assurance that the instructions were in fact read or that the verdict is based upon an application of the law to the evidence.

properly instructed jury pass upon the evidence."
*People v Liggett*, 378 Mich 706, 714; 148 NW2d 784
(1967).[5] That error seriously affected the integrity of
the proceedings, as a defendant in a criminal case "has
a constitutional right to have a jury determine his or
her guilt from its consideration of every essential
element of the charged offense." *People v Kowalski*, 489
Mich 488, 501; 803 NW2d 200 (2011). It is impossible to
determine whether the jurors who determined Traver's
guilt actually received and considered the instructions
addressing the elements of the charged offenses. This
hole in the record impugns the integrity of the proceed-
ings, requiring reversal of both convictions.

III

A second instructional error more definitively com-
pels a new trial.

As displayed earlier, the written information given
to the jury regarding the felony-firearm charge covered
the issue of possession, but said nothing at all about
the actual offense of felony-firearm. The model instruc-
tion for this charge states in relevant part:

**M Crim JI 11.34**
**Possession of Firearm at Time of Commission or**
**Attempted Commission of Felony (Felony Firearm)**

(1) The defendant is also charged with the separate
crime of possessing a firearm at the time [he / she]
committed [or attempted to commit] the crime of _____.

(2) To prove this charge, the prosecutor must prove
each of the following elements beyond a reasonable doubt:

(3) First, that the defendant committed [or attempted
to commit] the crime of _____, which has been

---

[5] *Liggett* was abrogated on other grounds by *People v Carines*, 460
Mich 750; 597 NW2d 130 (1999).

defined for you. It is not necessary, however, that the defendant be convicted of that crime.

(4) Second, that at the time the defendant committed [or attempted to commit] that crime [he / she] knowingly carried or possessed a firearm.

The jury was not instructed as to either of the two elements of this offense. Nor did defense counsel request that the trial court instruct the jury as to the elements of felony-firearm. To his credit, the prosecutor did. By failing to provide the jury with the model instruction, the trial court violated MCR 2.512(D)(2), as the instruction requested by the prosecutor was applicable and accurate.

We need not dwell on the standard governing review of this error, or resort to ineffective assistance of counsel principles to circumvent potential waiver issues, as the bottom line is not subject to debate. "A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *Kowalski*, 489 Mich at 501. Although instructional errors that misstate or omit elements of a crime do not necessarily mandate a new trial, *id.*, the *absence of any instruction* at all surely does. Indeed, our Supreme Court held in a substantially similar case, *People v Duncan*, 462 Mich 47; 610 NW2d 551 (2000), that the failure to instruct on the elements of felony-firearm constitutes structural error. The Court iterated a "bright line rule" that governs this case: "It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt." *Id.* at 48.

The trial court never instructed the jury regarding the elements of the crimes and then provided inaccurate written instructions regarding the elements of felony-firearm. Those errors obligate this Court to reverse Traver's convictions, both for felonious assault and felony-firearm.

IV

Traver also contends that ineffective assistance of counsel tainted his decision to withdraw a plea agreement that would have avoided incarceration. Traver alleged in an affidavit that he would not have proceeded to withdraw his plea had he known that the prosecution planned to add a felony-firearm charge if the plea-withdrawal motion succeeded. In his accompanying affidavit, Traver avers:

9. . . . [S]ubsequent to my motion to withdraw plea being granted the prosecutor added a charge of felony firearm.

10. . . . I [sic] was never explained that the prosecutor was going to do this and that I was not told that this charge carried a 2 year mandatory prison sentence if convicted.

Traver's allegations regarding his counsel's deficient performance require a remand for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). The United States Supreme Court held in *Padilla v Kentucky*, 559 US 356, 368-369; 130 S Ct 1473; 176 L Ed 2d 284 (2010), that the right to the effective assistance of counsel encompasses counsel's obligation to inform a defendant of the immigration consequences of a guilty plea. The converse must also apply: before withdrawing a guilty plea, a defendant must be advised of the advantages and disadvantages of that decision. Whether Traver was adequately ad-

vised of the promised collateral consequence of plea withdrawal cannot be ascertained on this record. Accordingly, before retrying Traver on the charges levied against him, the trial court must conduct a *Ginther* hearing if Traver requests one. If the court determines that counsel performed ineffectively by failing to advise Traver that the prosecutor intended to file a felony-firearm charge carrying a mandatory two-year imprisonment penalty, and that Traver would have declined to withdraw his plea had he been aware of this risk, the court must then order the prosecutor to reoffer the original plea agreement. See *Lafler v Cooper*, 566 US 156, 174; 132 S Ct 1376; 182 L Ed 2d 398 (2012).

We reverse Traver's convictions and sentences and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

M. J. KELLY, J., concurred with GLEICHER, P.J.

SAWYER, J. (*dissenting*). I respectfully dissent.

Defendant's expressed satisfaction with the instructions as given by the trial court waived any claimed error in the instructions themselves. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011). However, defendant also claims that his counsel was ineffective for failing to raise certain objections to the jury instructions. Accordingly, this Court's review is limited to determining if there was ineffective assistance of counsel. Moreover, because defendant did not move for a new trial or an evidentiary hearing on his claim of ineffective assistance, our review is limited to mistakes apparent on the existing record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). We approach a claim of ineffective assistance with a "strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). Accordingly, "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). To demonstrate prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id.*

Defendant first argues that the trial court's instructions regarding possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, left the jury with no choice but to find him guilty of the offense once it found him guilty of felonious assault. The trial court instructed the jury, at defense counsel's behest, as follows: "If you do find the defendant guilty in count one, two, or three and understand, in your belief, that a weapon was used to commission those crimes, then count four would be applicable."

Defendant has failed to establish the factual predicate of his argument. The court only stated that felony-

firearm would be "applicable" in the identified circumstances, not that the jury must find defendant guilty. In other words, what the court told the jury was that consideration of the felony-firearm charge was appropriate or relevant if and only if it found defendant guilty of one or more of the other charged crimes and that a weapon was used in the commission of the crime(s).

Nonetheless, I would agree that the court's instruction was erroneous. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011) (quotation marks and citation omitted). Thus, a conviction of an underlying felony is not an element of felony-firearm; the jury must only find that a defendant committed *or attempted* to commit a felony. *People v Lewis*, 415 Mich 443, 453-454; 330 NW2d 16 (1982). The court compounded this error when it instructed, "If . . . you find the defendant not guilty of the other three counts, you cannot find him guilty of the felony firearm." This error, however, worked to defendant's advantage in that it took away from the jury the discretion to find him guilty of felony-firearm while acquitting him of the underlying felony. *Id*. Additionally, because a defendant need only carry or have a firearm in his possession during the commission or attempted commission of a crime, the court's instruction that the felony-firearm charge was only applicable if the jury concluded "that a weapon was used to commission" any of the underlying crimes for which the jury found defendant guilty was erroneous.[1] In short, the prejudice in this instruction was against the prosecution, not defendant.

---

[1] This portion of the instruction was also wrong because a defendant cannot be found guilty of felony-firearm if the underlying crime is carrying a concealed weapon (CCW), MCL 750.227. MCL 750.227b(1)

Defendant also argues that he was prejudiced by the cited instruction because the court failed to instruct the jury that it could find defendant guilty on all, some, or none of the charged crimes in accordance with M Crim JI 3.20.[2] However, the "use of the standard criminal jury instructions is not mandatory and they are not binding authority." *People v Williams*, 288 Mich App 67, 76 n 6; 792 NW2d 384 (2010). Furthermore, in the context of general instructions addressing the general concept of a charged crime, the court instructed the jury that "[i]f you find that the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty of the relative charge." This instruction speaks to how the jury must approach consideration of each crime charged. Moreover, as noted earlier, in its attempt to clarify the felony-firearm instruction, the trial court did refer to the jury's finding defendant guilty on counts one, two, *or* three. This had the effect of informing the jury that it need not find defendant guilty on all counts. Additionally, the jury did, in fact, acquit defendant of some of the charges, while convicting him of

---

("A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, 227, 227a, or 230, is guilty of a felony and shall be punished by imprisonment for 2 years."). This error would have prejudiced defendant had the jury found him guilty of CCW. But because it did not, the error was harmless.

[2] M Crim JI 3.20 provides as follows:

(1) The defendant is charged with ____ counts, that is, with the crimes of _____ and _____. These are separate crimes, and the prosecutor is charging that the defendant committed both of them. You must consider each crime separately in light of all the evidence in the case.

(2) You may find the defendant guilty of all or [any one / any combination] of these crimes [, guilty of a less serious crime,] or not guilty.

others. Thus, it is clear that the jury understood that it was to consider each charge separately. Defendant is unable to establish prejudice by the omission of this instruction.

Defendant next argues that the trial court effectively took consideration of one of the elements of felonious assault away from the jury when it stated that a pistol was admitted into evidence and that a pistol is a firearm, which is dangerous per se. The elements of assault with a dangerous weapon are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Bosca*, 310 Mich App 1, 20; 871 NW2d 307 (2015) (quotation marks and citation omitted). "When a trial court instructs that an essential element of a criminal offense exists as a matter of law, error requiring reversal will be found." *People v Tice*, 220 Mich App 47, 54; 558 NW2d 245 (1996).

Again, defendant fails to establish the factual predicate of his claim of error. The trial court did not state that defendant had a firearm or dangerous weapon during the alleged assault, but rather that "[o]ne of the exhibits has been a pistol" and that a pistol *can be* considered a dangerous weapon." (Emphasis added.) Hence, the essential elements of whether defendant assaulted St. Andre and whether he did so with a dangerous weapon were left for the jury. Furthermore, the court did not err by stating that a pistol can be a dangerous weapon because, by statute, "a pistol or other firearm" is a dangerous weapon. MCL 750.226(1).[3] De-

---

[3] MCL 750.226(1) provides, "A person shall not, with intent to use the same unlawfully against the person of another, go armed with a pistol or other firearm . . . or any other dangerous or deadly weapon or instrument."

fense counsel cannot be deemed to have rendered ineffective assistance predicated on the failure "to make a meritless request or objection." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).

Finally, defendant argues that the trial court erred by not instructing the jury "on all the elements of the crimes." In response, the prosecution asserts the court provided the jury with written instructions that contained the elements of each of the felony counts, which it attached as an exhibit to its brief on appeal. The prosecution bases this assertion on the following statement made by the court to the jury: "To prove the charges, the prosecutor must prove beyond a reasonable doubt the following information *that you have in your hand*." (Emphasis added.) Defendant maintains that "it is unknown what was given to the jury as this is not part of the record."

Although there is no copy in the record of what was given to the jury, the trial transcript strongly supports the prosecution's position that the jury received written instructions of the elements for each crime. Specifically, after the jury was chosen, the court asked the court deputy to "pass these out to the jurors . . . ." Shortly thereafter, the court asked the jury "to take a look now at what has been passed out to you." The court then went over the elements for CCW and stated, "Now, as you can see in count two and count three, and count four, *those are the elements*, ladies and gentlemen, that you will need to pay attention to during the course of this trial." (Emphasis added.) Before dismissing the jurors to the jury room after closing arguments and instructions, the court then stated:

> When you go to the jury room, ladies and gentlemen, you will be provided with a written copy of these instructions should you so choose. If there are instructions that I

have given and others that I will give that you wish copies of, they will be provided to you. *You've already received the charges and the elements of the same.* [Emphasis added.]

The prosecution's position is further bolstered by defense counsel's contention that he had a "problem with count four" because it was unclear "that there has to be an underlying felony before . . . they could find anybody guilty of count four." As the court's oral instructions did not explain the elements of felony-firearm,[4] defense counsel had to be referring to a written instruction. It is clear that the jury did receive written instructions regarding the elements of the charged offenses. Additionally, with respect to the felony-firearm charge, the trial court did, at counsel's request, clarify the instruction. As noted earlier, although the clarification was inaccurate, those inaccuracies actually worked to defendant's advantage because they created a higher burden on the prosecution than required by the law.

No prejudicial error having been shown with respect to the trial court's instructions on the elements of the crimes charged, defendant's claim of ineffective assistance predicated on the same is without merit. *Chelmicki*, 305 Mich App at 69. However, I do wish to address the majority's concerns with the fact that much of the jury instructions on the elements of the crime were given only in written form, not read aloud to the jury.

I note that defendant barely presents an argument on this point. In one sentence in his brief, defendant states that "the trial court omitted reading the elements of the count of felonious assault and the count of felony firearm; coincidentally, the two counts the

---

[4] Instead, they merely defined "possession."

Defendant-Appellant was found guilty of." Defendant, however, does not address that the trial court had provided written instructions, nor does defendant address any issue regarding whether it is legally adequate to only provide written instructions or whether all instructions must also be read aloud to the jury.

Nonetheless, without the assistance of adequate briefing by defendant, the majority ventures off into this issue and attempts to create a requirement that instructions must be read aloud, without providing an actual basis for the existence of that requirement. While the majority looks to the court rules regarding instruction of the jury in criminal cases, those rules do not specifically require that the jury be verbally instructed, rather than instructed in writing. The majority then states, without referring to authority, that judges instruct juries by reading the instructions out loud. While I do not doubt that this is the customary practice, that it is customary does not translate into it being a required practice.

The majority then turns to the dictionary to find that the word "instruct" is defined as "to teach." Then, without even turning to the dictionary, the majority pronounces that teaching is a verbal experience. Again, while teaching is often verbal, that does not mean that it must be verbal.

In short, the majority points to no established authority in this state that jury instructions must be verbal rather than written. While this may be the customary, and perhaps even the preferred practice, that does not mean that it is the required practice. And we must not forget that defendant did not object to the trial court's engaging in this practice. Because we must analyze this issue as one of ineffective assistance of counsel, to reverse we must be able to reach the

conclusion that there is a reasonable likelihood that a different result would have occurred absent the error. Even if I were to accept the proposition that providing some of the instructions only in writing is, in fact, error, I am not persuaded that this error resulted in prejudice to the defendant. That is, neither defendant nor the majority can make the case that there is a reasonable likelihood that defendant would have been acquitted had the instructions been spoken rather than just provided in writing.

I also disagree with the majority's analysis of defendant's argument that he received ineffective assistance of counsel during the withdrawal of his plea agreement. There is no indication in the record whether defense counsel informed defendant of the consequences of withdrawing his plea agreement. And because defendant did not raise the issue of ineffective assistance of counsel in the trial court, our review is limited to the record before us. Defendant has not established a factual predicate for his claim, and the presumption that defense counsel acted effectively is not undermined. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Similarly, the record fails to show that the alleged error prejudiced defendant. There is nothing in the lower court record showing that he would not have sought a withdrawal of the plea had he been informed of the possible felony-firearm charge. Defense counsel stated at the hearing that defendant was seeking a withdrawal of the plea agreement because he was innocent of the charges and because he was concerned that his status as a marijuana caregiver would be affected. That a charge of felony-firearm may have been brought does not negate those motivating factors.

In sum, I am not persuaded that defendant has established that he received ineffective assistance of counsel. I would affirm.